**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| STEVEN M. B.,<br><br>                    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>                    Defendant. | **REPORT AND RECOMMENDATION**<br><br>2:17-cv-00970-JNP-EJF<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Steven B. ("Mr. B.")[1] filed this action asking the Court[2] to reverse the Acting Commissioner of Social Security's ("Commissioner") decision denying his claim for Disability Insurance Benefits ("DIB") payments under Title II of the Social Security Act ("Act").  (Pl.'s Opening Br. ("Pl.'s Br.") 2-3, 26, ECF No. 19.)  Having carefully considered the parties' memoranda and the complete record in the matter,[3] the undersigned RECOMMENDS the District Judge AFFIRM the Commissioner's decision.

## I.  FACTUAL AND PROCEDURAL HISTORY

Born in March 1960 (certified copy of the transcript of the entire record of the administrative proceedings relating to Steven M. B. ("Tr.__"), Tr. 70, ECF No. 13), Mr.

---

[1] Pursuant to newly adopted best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the undersigned will refer to the Plaintiff by his first name and last initial only in this Report and Recommendation.

[2] On January 24, 2018 the District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 14.)

[3] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the undersigned finds oral argument unnecessary and will make the recommendation on the basis of the written memoranda.

B. alleges disability based on a torn right arm bicep, torn ACL in his left shoulder, osteoarthritis, anxiety, back problems, neck problems, and gout.  (Tr. 158, 309.)  Mr. B. has a high school education (Tr. 70, 381) and previously worked as a self-employed handyman, forklift driver, warehouse coordinator, ramp agent, and warehouse manager. (Tr. 310.)  Mr. B. earned $28,977 in 2010, $7,730 in 2011, $11,117 in 2012, $15,565 in 2013, and $200 in 2014.  (Tr. 259.)

Mr. B. applied for disability benefits on September 25, 2014, alleging a disability onset date of September 25, 2010.  (Tr. 232.)  The Social Security Administration denied Mr. B.'s disability claim on April 23, 2015 (Tr. 154–57) and upon reconsideration on November 12, 2015.  (Tr. 158–60.)  On December 3, 2015, Mr. B. requested a hearing before an ALJ.  (Tr. 161.)  The ALJ conducted an administrative hearing on February 24, 2017.  (Tr. 64–96.)  On March 13, 2017, the ALJ issued his decision finding Mr. B. not disabled.  (Tr. 42–57.)  The ALJ followed the five-step sequential evaluation process at 20 C.F.R. § 404.1520 and determined Mr. B. could perform past relevant work as a shipping and receiving supervisor as generally performed in the national economy but not as actually performed.  (Tr. 56–57.)  On March 31, 2017, Mr. B. appealed the ALJ's decision to the Social Security Administration's Appeals Council. (Tr. 216–17.)  On June 28, 2017, the Appeals Council denied Mr. B.'s request to review the ALJ's decision (Tr. 1-5), thereby rendering the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review.  See 20 C.F.R. § 404.981 (explaining the effect of an Appeals Council denial).

## II. STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA").  The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).  The Commissioner's findings shall stand if supported by substantial evidence.  42 U.S.C. § 405(g).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence."  O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).[4]  The standard "requires more than a scintilla, but less than a preponderance."  Lax, 489 F.3d at 1084.  "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion."  Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988) (quoting Fulton v. Heckler, 760 F.2d 1052, 1055 (10th Cir. 1985)).  Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence."  Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability

---

[4] Courts apply the same analysis in determining disability under Title II and Title XVI. See House v. Astrue, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's," Lax, 489 F.3d at 1084 (quoting Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005)), but will "review only the sufficiency of the evidence," Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original).  The court does not have to accept the Commissioner's findings mechanically but will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the sustainability of the evidence test has been met."  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800–01 (10th Cir. 1991)).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'"  Lax, 489 F.3d at 1084 (quoting Zoltanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commissioner uses the wrong legal standards or where the Commissioner fails to demonstrate reliance on the correct legal standards.  See Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); Thomson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993); Andrade v. Sec'y of Health & Human Servs., 985 F.2d 1045, 1047 (10th Cir. 1993).

### III.  APPLICABLE LAW AND SEQUENTIAL EVALUATION PROCESS

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation.  See 20 C.F.R. § 404.1520; Williams v. Bowen, 844 F.2d 748, 750–53 (10th Cir. 1988); Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987).  The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

See 20 C.F.R. § 404.1520.  The claimant has the initial burden of establishing the disability in the first four steps.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other work existing in the national economy.  Id.

**IV.  ANALYSIS**

The ALJ in this case found Mr. B. had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, bilateral shoulder osteoarthritis, rotator cuff injury, torn left bicep, and right carpal tunnel syndrome.  (Tr. 48.)  The ALJ determined, however, that Mr. B. retained the residual functional capacity ("RFC") to perform light work.  (Tr. 51.)  The ALJ denied Mr. B.'s application for benefits concluding at step four of the five-step analysis, that Mr. B. did not qualify as disabled because he could still perform his past relevant work as a shipping and receiving supervisor as generally performed in the national economy.  (Tr. 56.)  Accordingly, the ALJ found Mr. B. not disabled.  (Tr. 56–57.)  See 20 C.F.R. § 404.1520(a)(4)(iv) (explaining that a claimant who can perform his past work will not qualify as disabled).

In challenging the ALJ's decision, Mr. B. asserts that the ALJ erred at step four in failing to credit his testimony regarding his level of pain and the impact of all of his impairments and in failing to adopt the limitations the ALJ promulgated in his second and third hypotheticals given to the Vocational Expert ("VE").  (Pl. Br. 14–19, ECF No. 19.)  Mr. B. further asserts that the ALJ erred in formulating his RFC because the ALJ did not correctly consider and evaluate all of his physical and mental impairments.  (Id. at 19-25.)  In particular, Mr. B. contends the ALJ failed to consider specifically how his impairments would impact his ability to stay on task, to interact with his coworkers, supervisors, and the general public, and to meet the general demands of full-time employment.  (Id. at 19–24.)  Mr. B. waives any arguments not raised in his opening brief.  See Anderson v. Dep't of Labor, 422 F.3d 1155, 1182 n. 51 (10th Cir. 2005) (failing to raise appeal issues in opening brief waives those points because doing so deprives the opponent of the opportunity to address the arguments).

6

### 1.  Pain Analysis

Mr. B. argues the ALJ erred in his treatment and evaluation of Mr. B.'s pain and symptom testimony because "a claimant's testimony in a hearing may be different than his reports to medical providers for a number of different reasons, many of which have little to do with a claimant's credibility."  (Pl. Br. 17, ECF No. 19.)  The Commissioner argues the ALJ did not err in his analysis of Mr. B.'s symptom and pain testimony because objective medical evidence, Mr. B.'s ability to perform activities of daily living, and his ability to work for five years of the relevant period undercut his claims.  (Def.'s Answer Brief ("Opp'n") 9-16, ECF No. 21.)  The undersigned finds substantial evidence supports the ALJ's decision.

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability."  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993).  The SSA no longer uses the term "credibility" when evaluating a claimant's statements about his or her symptoms.  See SSR 16-3p, Titles II and XVI:  Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, (Oct. 25, 2017) at *2[5] (stating "we are eliminating the use of

---

[5] SSR 16-3p applies to claims decided on or after March 28, 2016.  SSR 16-3p, 2017 WL 5180304, at *1.  On March 13, 2017, the ALJ issued his decision finding Mr. B. not disabled (Tr. 42–57), and the Appeals Council denied Mr. B's request to review the ALJ's decision (Tr. 1–5).  Accordingly, the undersigned evaluates Mr. B's claims pursuant to SSR 16-3p.  This Report and Recommendation cites to the revised SSR 16-3p published on October 25, 2017.  The SSA first published SSR 16-3p on March 16, 2016 (see SSR 16-3p, Titles II & XVI:  Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016), and then republished the Ruling on October 25, 2017.  The revision does not change the content of the Ruling but instead changes the term "effective date" to "applicable date" and updates citations "to reflect the revised regulations that became effective on March 27, 2017."  SSR 16-3p, 2017 WL 5180304, at *1.

the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term."). Instead, the Agency directs its adjudicators to

> focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . . .

Id. at *11. Under that directive, when evaluating the claimant's statements about his symptoms, the ALJ "determine[s] whether the individual has a medically determinable impairment … that could reasonably be expected to produce the individual's alleged symptoms." Id. at *3. If the claimant establishes "the existence of a medically determinable impairment that could reasonably be expected to produce pain or other symptoms", the ALJ next evaluates "the intensity and persistence of an individual's symptoms such as pain and determine the extent to which the individual's symptoms limit his or her ability to perform work-related activities." Id. at *4.

When assessing the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, an ALJ must consider several factors in addition to the evidence from medical and nonmedical sources, including:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *7–8.

Generally, "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." Id. at *9. Alternatively, a claimant's statements about the intensity and persistence of his symptoms may contradict the evidence in the record "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms." Id.

In this case, the ALJ found Mr. B. had a medically determinable impairment that could reasonably produce his allegations of pain. (Tr. 53.) However, the ALJ found Mr. B.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 53.) The ALJ found the evidence in the record did not fully support Mr. B.'s complaints about his level of pain because his "reports to providers and the objective medical evidence [were] not consistent with [his] allegations of disabling limitations." (Id.) The ALJ noted that "[p]hysical examinations have confirmed a normal gait and coordination, no edema or spasm, and normal muscle tone and strength, but some tenderness and decreased range of motion." (Tr. 53–54.) The ALJ also

considered Mr. B.'s attempts at pain relief and noted that Mr. B. "has been noted as noncompliant with his home exercise plan" and also "reported that his pain is opioid responsive and that treatment with a Transcutaneous Electrical Nerve Stimulation (TENS) unit was helpful." (Tr. 54.) With respect to Mr. B.'s upper extremities, the ALJ found that Mr. B had only minimal strength and range of motion limits and sought minimal medical care after 2013. (Tr. 54.)

While Mr. B. takes issue with the ALJ's reliance on some of the objective medical evidence (Pl.'s Br. 17–18, ECF No. 19), as the Commissioner argues (see Opp'n 12, ECF No. 21), regulations require the ALJ to evaluate a claimant's statements "in relation to the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4) (2011-2017).[6] Mr. B. argues that "medical records, while very helpful, may lack information necessary to evaluate a claimant's ability to handle the physical, mental and social demands of full-time work." (Pl.'s Br. 17–17, ECF No. 19.) However, at step four, the burden falls on the claimant, Mr. B, to come forward with evidence to prove his RFC. See Henrie v. U.S. Dep't. of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993) (stating the claimant bears the burden of proof at step four and "continues to bear the ultimate burden of proving that []he is disabled under the regulations."). Mr. B argues

---

[6] On January 18, 2017, the SSA published its final rules entitled "Revisions to Rules Regarding the Evaluation of Medical Evidence". See Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017). On March 27, 2017 the final rules took effect. Id. at *5844. The new rules apply to claims filed on or after March 27, 2017. See id.; see also Revisions to Rules Regarding the Evaluation of Medical Evidence, https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html. (last visited Dec. 20, 2018). Mr. B. filed his claim on September 25, 2014 (see Tr. 232). Accordingly, the undersigned applies the pre-2017 version of the regulation in effect at the time Mr. B. filed his claim.

the ALJ should have reached a different conclusion from the evidence presented but does not point to evidence that dictates a different outcome.  Where two people can reach different conclusions from the evidence, one of them the ALJ's conclusion, substantial evidence exists to support the ALJ's decision.  Lax, 489 F.3d at 1084.

The record also shows the ALJ considered additional factors in assessing the intensity, persistence, and limiting effects of Mr. B.'s symptoms.  The ALJ considered Mr. B.'s daily activities and noted Mr. B. did not express any difficulty taking care of his personal care, preparing his own meals, performing light housework, driving short distances, shopping, going for short walks, and regularly spending time with others.  (Tr. 54.)  Further, the ALJ noted Mr. B. maintained substantial gainful employment in 2012 and 2013 as a forklift operator, "which required him to jump on and off the forklift repeatedly."  (Tr. 54).  Additionally, in 2013, Mr. B. "reported his back pain worsened after laying sheet rock," nevertheless, he "reported that he had been working 65 hours per week in landscaping and operating heavy machinery."  (Tr. 54.)  The ALJ reasonably concluded that Mr. B.'s ability to work for five years of the relevant period of alleged disability supported his finding that Ms. B's impairments and related symptomology did not greatly limit his ability to perform work-related activities.  (Tr. 55); see 42 U.S.C. § 423(d)(2)(A) (stating a claimant is not disabled unless "he is not only unable to do his previous work but [also] cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work").

The undersigned finds substantial evidence supports the ALJ's analysis and conclusions regarding Mr. B.'s allegations of pain and other symptoms.  The undersigned, therefore, RECOMMENDS the District Judge affirm the ALJ's findings that

the record evidence did not support Mr. B.'s statements regarding his pain and other symptoms.

### 2.  The ALJ's Treatment of Certain Medical Evidence

<u>Physical Limitations</u>

Mr. B. also identifies the ALJ's omission of postural and reaching limitations in the RFC as inconsistent with his assignment of great weight to state agency medical consultant Dr. Morrison.  (Pl.'s Br. 18–19, ECF No. 19.)  The Commissioner disagrees with Mr. B. contending the RFC did include some of Dr. Morrison's recommended postural limitations.  (Opp'n 13, ECF No. 21.)  The undersigned finds no error in the ALJ's decision not to adopt 100% of Dr. Morrison's recommendations.

In this case, the ALJ found Mr. B. had the RFC to perform light work with the ability to:

> lift and carry up to twenty pounds occasionally and ten pounds frequently, can stand or walk for six hours total, and can sit for six hours total in an eight-hour day.  … frequently climb ramps and stairs, can occasionally climb ladders, ropes, or scaffolds, and can frequently kneel, stoop, balance, crouch, and crawl.

(Tr. 51.)  In November 2015, Dr. Morrison opined that Mr. B. could "lift 10 lbs frequently, 20 lbs, occasionally, sit 6/8 hours, stand-walk 6/8 hours."  (Tr. 135.)  Dr. Morrison further opined Mr. B. could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but could never climb ladders, ropes, or scaffolds.  (Tr. 138.)  Dr. Morrison also found that Mr. B. had limited overhead reach.  (Tr. 138.)  The ALJ discounted the reaching limitation because he did not find the limitations "consistent with [Mr. B.'s] minimal treatment since 2013 for his shoulder conditions and his work activity."  (Tr. 54.)  As the Commissioner notes (<u>see</u> Opp'n 14, ECF No. 21), in August 2013, Dr. Tashjian

diagnosed Mr. B. with "[b]ilateral rotator cuff disease and left biceps tendonpathy" (Tr. 844), however, Mr. B. continued to work as a handyman through 2015.  (Tr. 54; <u>see also</u> Tr. 310.)  Mr. B. rated his shoulder pain as a six out of ten in November 2014 (Tr. 926) and complained of generalized pain from October 2014 through December 2014 (<u>see</u> <u>id.</u>) but continued to work.  Thus, to the extent Mr. B. argues the ALJ did not take <u>any</u> postural or reaching limitations into account, Mr. B.'s argument lacks merit as the ALJ largely tracked Dr. Morrison's opinion and explained his deviation from it.  Further, the undersigned finds substantial evidence supports the ALJ's decision and finds no error in the ALJ's treatment of Dr. Morrison's opinion.

<u>Mental Limitations</u>

Mr. B. challenges the ALJ's treatment of the medical opinions of state agency psychological consultants Drs. Charles Raps, Ph.D. and George Hughes, Ph.D. in relation to the progress notes from "non-specialist general practice physicians."  (Pl.'s Br. 19, ECF No. 19.)  Mr. B. argues Drs. Raps and Hughes found Mr. B. would have "moderate difficulty maintaining social functioning and would be moderately limited in working appropriately with supervisors and the general public."  (<u>Id.</u>)  Mr. B. argues that because Drs. Raps and Hughes specialize in psychological health, the ALJ should have ascribed their opinions more weight than the opinions from Mr. B.'s treating general health practitioners.  (<u>Id.</u>)  The Commissioner counters that the ALJ considered and discussed the opinions from Drs. Raps and Hughes but gave their opinions "little weight because they were inconsistent with Plaintiff's 'numerous normal mental status examinations confirming normal behavior, judgment, thought content, mood, and affect." (Opp'n 15, ECF No. 21 (quoting Tr. 55).)

An ALJ must evaluate every medical opinion.  20 C.F.R. § 404.1527(c) (2017).

"Medical opinions are statements from acceptable medical sources that reflect

judgments about the nature and severity of [a claimant's] impairment(s), including [a

claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite

impairment(s), and [a claimant's] physical or mental restrictions."  20 C.F.R. §

404.1527(a)(1) (2017).  The ALJ must consider the following factors in deciding the

weight to give medical opinions:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported by
> relevant evidence; (4) consistency between the opinion and the record as a
> whole; (5) whether or not the physician is a specialist in the area upon which
> an opinion is rendered; and (6) other factors brought to the ALJ's attention
> which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300–01 (10th Cir. 2003) (citation omitted); see

also 20 C.F.R. § 404.1527(c)(2)-(6) (2017).  An ALJ's decision need not "apply

expressly each of the six relevant factors in deciding what weight to give a medical

opinion."  Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).  When considering

medical opinion evidence, the ALJ must weigh and resolve evidentiary conflicts and

inconsistencies.  See Richardson v. Perales, 402 U.S. 389, 399 (1971) (reflecting the

ALJ's duty to resolve conflicting medical evidence).  The court may not supply possible

reasons for assigning the weight the ALJ did and may only evaluate the ALJ's decision

on the stated reasons.  Robinson v. Barnhart, 366 F.3d 1078, 1084–85 (10th Cir. 2004).

Both Drs. Raps and Hughes diagnosed Mr. B. with an affective disorder and an

anxiety disorder and found he had moderate difficulties in his ability to maintain social

functioning.  (See Tr. 115; see also Tr. 136.)  The ALJ assigned their opinions little

weight because he found the doctors provided their opinions "under the outdated B criteria and mental listings.  Additionally, these opinions [were] inconsistent with the numerous normal mental status examinations confirming normal behavior, judgment, thought content, mood and affect (Exhibit 15F/22; 10F/15; 21F/4)."  (Tr. 55.)  The ALJ further noted Mr. B. "also testified that he was able to interact with customers in his handyman work appropriately and reported he has never been dismissed from a job due to difficulties getting along with others (Exhibit 13E/7)."  (Id.)  Mr. B. takes issue with the ALJ's decision to discount Drs. Raps and Hughes' medical opinions because the opinions "were supposedly inconsistent with progress notes of non-specialist general practice physicians."  (Pl.'s Br. 19, ECF No. 19.)  Mr. B. contends the ALJ should have assigned greater weight to the opinions of Drs. Raps and Hughes because they specialize in psychological health.

Under the regulations, when considering the medical evidence from a federal or state agency medical or psychological consultant, an ALJ must consider medical evidence according to § 404.1527.  See 20 C.F.R. § 404.1513a(b)(1) (2017)[7] (stating "[a]dministrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 404.1520(b), 404.1520(c), and 404.1527, as appropriate").  Even if a state psychological consultant specializes in "psychological health," (Pl.'s Br. 19, ECF No. 19), the ALJ will still consider whether his medical opinions appear consistent with the medical evidence.

---

[7] Although the rules in 20 C.F.R. § 404.1513a took effect on March 27, 2017, 20 C.F.R. § 404.1527(e) makes the rules in 20 C.F.R. § 404.1513a applicable when analyzing evidence from federal or state agency medical or psychological consultants for claims filed before March 27, 2017.

See 20 C.F.R. § 404.1527(c)(4) (2018).  "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [an ALJ] will give to that medical opinion."  20 C.F.R. § 404.1527(c)(4).  In this case, the ALJ assigned the agency doctors' opinions little weight because their opinions "[were] inconsistent with the numerous normal mental status examinations confirming normal behavior, judgment, thought content, mood and affect."  (Tr. 55.)  The ALJ further noted that Mr. B.'s "[m]ental status examinations have confirmed normal behavior, normal judgment and thought content, an unremarkable mood and affect, and no difficulty with memory."  (Tr. 54.)  Mr. B. also testified that from 2013 until 2015, he earned $15,000 per year as a self-employed handyman.  (Tr. 54.)  The ALJ concluded that this income indicated "an ability to work and interact with the public effectively."  (Id.)  Where a record contains more than a scintilla of relevant evidence that a reasonable mind might accept to support the challenged conclusion, substantial evidence supports that decision.  See O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994); Lax, 489 F.3d at 1084.  The ALJ's decision identified record evidence to support his conclusion regarding the inconsistency of Drs. Raps and Hughes' medical opinions.  The evidence he cites constitutes substantial evidence.  Accordingly, the undersigned RECOMMENDS the District Judge find substantial evidence supports the weight the ALJ assigned to the medical opinions from Drs. Raps and Hughes.

### 3.  Mr. B.'s Residual Functional Capacity

Mr. B. contends that "medical records, while very helpful, may lack information necessary to evaluate a claimant's ability to handle the physical, mental and social demands of full-time work in competitive employment or a claimant's ability to work on a

sustained basis eight hours a day, five days a week, week after week." (Pl.'s Br. at 17–18, ECF No. 19 (emphasis in original).)  Mr. B. argues the ALJ did not properly consider and evaluate the cumulative effect of all of his physical and mental impairments.  (Id. at 19–20.)  Mr. B. specifically asserts the ALJ failed to address "how his impairments would impact staying on task, social interaction with coworkers, supervisors and the general public, and other productivity demands of full-time, competitive work."  (Id. at 20.)  Mr. B. contends that when one compares "(1) the three RFCs formulated during the hearing and the three hypothetical questions posed during the hearing based on such RFCs (and the VE's answers thereto) to (2) the Administrative Law Judge's findings and conclusions as to the claimant's RFC which ended up in the Decision," the ALJ's failure to consider his impairments properly becomes evident.  (Id.)

The Commissioner, responding to Mr. B.'s summary of his argument with respect to the ALJ's formulation of his RFC, argues Mr. B.'s assertion "essentially rehashes [Mr. B.'s] arguments that the ALJ should have included additional physical or mental limitations in the RFC assessment."  (Opp'n 17, ECF No. 21.)  The undersigned finds the ALJ did consider all of Mr. B's impairments, and substantial evidence supports his RFC determination.  "[I]n assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."  Wells v. Colvin, 727 F.3d 1061, 1065 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)) (emphasis in original).  "[T]he ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts … and nonmedical evidence."  Wells, 727 F.3d at 1065 (quoting Social Security Ruling (SSR) 96–8p, 1996 WL 374184, at *7 (July

2, 1996) (alteration in original).  "The RFC assessment is a function-by-function

assessment based upon all of the relevant evidence of an individual's ability to do work-

related activities."  SSR 96–8p, 1996 WL 374184, at *3.

> Mr. B. asserts that:
>
> despite Mr. B[.]'s evidence as to needing to get up and move around and visit the bathroom often, … difficulties in staying on task and difficulty getting along with people …, and the Vocational Expert's answer to the [ALJ's] third hypothetical question, … , the Administrative Law Judge proceeded to eventually determine that Mr. B[.] was capable of performing a limited range of light work, with <u>no</u> limitations as to social interaction and no limitation as to concentration, persistence or pace or other aspects of mental functioning.

(Pl.'s Br. 22, ECF No. 19) (emphasis in original).  Mr. B. confuses step four and step

five.  <u>See</u> 20 C.F.R. § 404.1520.  The claimant bears the burden at step 4 to establish

his disability.  <u>See</u> <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993) (stating

"[t]he claimant bears the burden of proof through step four of the analysis.").  At step

four, the ALJ asseses the claimant's RFC, determines the physical and mental

demands of the claimant's past relevant work, and evaluates whether the claimant

retains the ability to perform that work based on the claimant's physical and mental

RFC.  <u>See</u> <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (describing the

three phases of analysis an ALJ must complete at step four to determine whether the

claimant can meet the job demands of his past relevant work based on his RFC).  If an

ALJ concludes that the claimant cannot perform his past relevant work, then he

proceeds to step five, where the burden shifts to the Commissioner to show that the

claimant "can perform work that exists in the national economy."  <u>Nielson</u>, 992 F.2d at

1120.  At step five the Commissioner "must consider a claimant's residual functional

capacity, age, education, and work experience" in determining whether jobs exist in

significant numbers in the national economy that the claimant can perform.  Id. Therefore, the ALJ' does not consider the claimant's age, education, or work experience prior to step five.

VE testimony can help the ALJ to meet his burden at step five to show that, given the claimant's age, education, work experience, and RFC, the claimant can perform jobs that exists in the national economy.  See Rogers v. Astrue, 312 F. A'ppx 138, 140 (10th Cir. 2009) (unpublished) (stating at step five "an ALJ can rely on VE testimony 'if the issue in determining whether the claimant is disabled is whether the claimant's work skills can be used in other work and the specific occupations in which they can be used.'" (quoting Haddock v. Apfel, 196 F.3d 1084, 1089 (10th Cir. 1999) (quotations and brackets omitted)).  Additionally, an ALJ may rely on VE testimony at step four for information "about the demands of the claimant's past relevant work."  Winfrey v. Chater, 92 F.3d 1017, 1025 (10th Cir. 1996).  "For example, if the ALJ determines that the claimant's mental impairment affects his ability to concentrate, the ALJ may ask the VE for information about the level of concentration necessary to perform the claimant's past relevant work."  Id. (emphasis added).  However, the ALJ may only rely on medical evidence, the claimant's statements, and nonmedical evidence when formulating the claimant's RFC.  See SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) (stating [i]t is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms, due to such factors as age.").  Accordingly, one cannot use VE testimony to invalidate an RFC that considers factors that an ALJ absolutely may not consider at step four.

An ALJ "[is] not required to accept the answer to a hypothetical question that include[s] limitations claimed by plaintiff but not accepted by the ALJ as supported by the record." Bean v. Chater, 77 F.3d 1210, 1214 (10th Cir. 1995).  As discussed above, the ALJ determined evidence in the record did not support Mr. B.'s statements of disabling pain, and the undersigned concluded the ALJ followed the correct legal procedure and substantial evidence supports the ALJ's finding.  In addition to the conditions discussed above, the ALJ found no special accommodations necessary for Mr. B.'s urinary issues because while his testimony indicated the need to go to the bathroom ten times a day, he denied urgency to his providers.  (Tr. 48.)

The undersigned also found substantial evidence supported the ALJ's findings that Mr. B. did not have any mental limitations.  Accordingly, the undersigned finds the ALJ followed the correct legal procedures in formulating Mr. B.'s RFC.  The ALJ's hypothetical questions to the VE and the VE testimony have no relevance to the formulation of the RFC.  Because the undersigned finds the ALJ followed correct legal procedures and substantial evidence supports the ALJ's formulation of Mr. B.'s RFC, the undersigned RECOMMENDS the District Judge affirm the ALJ's decision.

## RECOMMENDATION

For the reasons discussed above, the undersigned RECOMMENDS the District Judge AFFIRM the Commissioner's decision.

The Court will send copies of this Report and Recommendation to all parties, who are hereby notified of their right to object.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The parties must file any objection to this Report and Recommendation within

fourteen (14) days of service thereof.  Id.  Failure to object may constitute waiver of objections upon subsequent review.

DATED this 2nd day of January, 2019.


BY THE COURT:


Evelyn J. Furse
United States Magistrate Judge